The next case called for oral argument is People v. Joker Greathouse. Council, whenever you're ready. May it please the court. Council, my name is Amanda Horner from the Office of the State Appellate Defender and I represent Mr. Greathouse. Unless this court has any questions, Mr. Greathouse will confine his argument today to issue number two. Your Honor, this is a case about a single story with multiple versions. The version that the jury heard, which was a story of a young child who consistently reported the same allegations from December of 2009 until January of 2012. And the story that the record showed actually happened, which was a child who was inconsistent, who at times during a witness competency hearing couldn't remember key events leading up three months before the trial. Yet the jury didn't hear this inconsistent statements that the child made because Council inexplicably failed to impeach her with this information or otherwise present it to the jury. Now the failure to impeach her with this information was critical, where Council's case depended entirely on the fact that this child had been coached. At least he attempted to show that she had been coached. And yet he failed to impeach her with her own inconsistent statements. At trial, the jury saw a forensic interview where this child testified in December or was interviewed in December of 2009, where she made allegations against Mr. Greathouse. Now in this interview, she explained that her mother had given her memory pills to help her remember what Mr. Greathouse had done to her prior to coming forward and making this allegation. And then at trial, she consistently testified regarding the allegations of Mr. Greathouse, but she clarified that these memory pills were actually attitude pills that her mother had given her to help her adjust her attitude. However, at a witness competency hearing that happened a mere three months before trial, she testified that she couldn't remember talking about the memory pills. In fact, she didn't remember her forensic interview at all. All of this goes to the theory that defense counsel tried to present to the jury that she had been coached, that she needed memory pills to help her remember what Mr. Greathouse did to her to bring forth that allegation. And then she forgot again. And the only reason she remembered was before trial for no particular reason. Now at trial, she testified that her mother hadn't talked with her about this case and she hadn't discussed this case with anyone. And yet there's this three month gap where she knew nothing. And then prior to going to trial, she suddenly remembered all of these details. And yet the jury had no knowledge of this gap in her information. How do you say the jury had no gap? They showed the videotape to the jury. Yes. And didn't the videotape contradict some of her testimony that she was giving on cross-examination? No, Your Honor, it did not. Her video, she said that her mother had given her memory pills to help her remember. And then she made the allegations regarding Mr. Greathouse, a single occurring event. And then at trial, she explained that she had since learned that those were attitude pills, that she had, she called them memory pills, but they were actually attitude pills to help her adjust her attitude. Okay, so there wasn't really any inconsistency there, simply her clarifying. Which makes sense when you have an eight-year-old at the time of the forensic interview versus an 11-year-old at the actual time of trial. And that makes sense if that were the only things that occurred. It doesn't make sense in light of the witness competency hearing, however, where she testified that she didn't remember talking about the memory pills. She didn't remember going and drawing pictures and talking to the forensic interviewer at all. And depending on how you read the transcript, she didn't, she remembered talking about Mr. Greathouse, but she didn't really remember the underlying events of the allegation itself. And that was three months before trial. And the only thing that explains this, I needed pills to remember, and now I remember, and I forgot again, and now I remember again, is this idea that she was being coached, which has a lot of merit when you actually look at the record as a whole. The mother had wanted revenge against Mr. Greathouse. There was testimony at trial that she was mad at Mr. Greathouse because he repeatedly was unfaithful to her. And she kicked him out in February of 2009. And then she made statements that she was going to get back at him, that if she couldn't have him, no one was going to be able to have him. And then, of course, between February of 2009 and December of 2009, which is when Mr. Greathouse left and when these allegations were made, she had multiple boyfriends move into the house who were the new daddies to her children. Cousins. Yes, they were all cousins, right? But every time a new man moved in, it was Daddy Jack or Daddy whatever the first name was, right? So we have this on the record. So at the very least, there's some problems with their home life there. But we also have a mother who testified that she gave her Prozac to an eight-year-old child three times a day. So at best, she's giving her child Prozac. But at worst, she's using this to manipulate her child as a weapon against Mr. Greathouse. There is no rational reason that the jury wouldn't have heard that this child had trouble remembering events a mere three months before trial. There's simply no rational reason for this. It supported counsel's theory. In fact, it was the only real solid evidence that he would have been able to present to show that this child had been coached. Certainly, there were the memory pills, which in and of itself is troubling. But that had been explained. When the jury received the case, though, it was ultimately a question of credibility. The complainants and Mr. Greathouse. He testified in his own defense that he did not do this. And the jury had a case where a child had consistently told the same story from December of 2009 until January of 2012. The record shows that was not what happened. And there was simply no reason that counsel did not make this clear to the jury, that this child couldn't remember these events. And yet she had talked to no one between the time she couldn't remember and the trial. How did she suddenly remember all of this information? So are you alleging that? So are you wanting this court to find that her counsel was incompetent? Or do you believe that this court should find that the competency ruling was inappropriate? Your Honor, I think the competency ruling was inappropriate. She should never have been allowed to testify. We also allege that once she was allowed to testify, counsel was ineffective. He didn't receive a fair trial because counsel did not properly impeach her. He didn't show once he lost that initial competency ruling. He did not use that competency ruling to show that this child couldn't remember that she was being coached, which was the theory he was attempting to bring to the jury in the first place. How extensive was cross-examination? I have not looked at the record to see how extensive cross, but how do you think he did on cross except for this, the point you're making? Well, his cross-examination focused almost entirely on the memory pills, right? What were these memory pills? What were they used for? And that's certainly something that, that's a troubling fact in the case, right? I mean, what is a memory pill? Why are you taking this memory pill? But that's where the bulk of his cross-examination rested on. But the memory pills make a lot more sense when you consider the fact that this child didn't remember three months before trial. He also cross-examined her on the fact that she hadn't spoken to her mother prior to trial. In other words, trying to insinuate that, hey, you haven't talked to your mother about this case at all. That's a little bit bizarre, right? I mean, a mother and child are going to talk about their case just when something like this happens, right? And she says, no, we haven't. Now, that takes on a whole different tone. Had the jury known that three months ago she couldn't remember, and now she remembers. I mean, she had consistently testified. So the fact she hadn't talked to her mother didn't really mean anything because in December of 2009, she remembered. And in January 2012, when she testified, she remembered. Maybe she didn't need to speak to her mother because she had this all together. What the jury didn't know was there's a gap where she didn't remember what was going on. She didn't remember a forensic interview, which lasted, if I recall, almost an hour. She didn't remember these major events. And how did she remember that, right? Had the jury known that she had testified she didn't remember any of this, and then she also testified that she hadn't talked to anyone about the case, that would have raised questions. How did you suddenly remember today, right? The jury didn't know that information. All the jury knew was that she remembered when she did her forensic interview, and then three years later, she remembered at trial. So the cross-examination was started, but it wasn't effective without this impeachment evidence. It was just the start. Had he then followed up an impeachment and said, well, how did you remember then, because three months ago you didn't, that would have made a phenomenal difference in this case. And there is a reasonable belief that had he properly impeached her, the jury verdict might have come out differently. I mean, this is a close case. You have essentially a credibility determination between Mr. Greathouse and the complainant. And this is a complainant who, for a variety of reasons, probably couldn't remember and has inconsistent testimony. And then you have a mother who's on the record that wants revenge against Mr. Greathouse. And you have a lot of other memory pills that have come up during the course of the trial. And the memory pills and the failure to remember, that's reasonable doubt. But without that impeachment evidence, there was no evidence presented to the jury. I'm sorry. I see that my time is up. No, you can finish your sentence. I was just going to say, there was no evidence presented to the jury that this child had been anything other than consistent. Thank you. Thank you, counsel. Counsel? Your honors, counsel, I'm Rebecca McCormick, arguing for the people. Counsel can't be ineffective for doing something he couldn't do. The competency hearing was restricted. The court instructed defense counsel that he could not get into the facts, that it was not going to be a substitute for a deposition. And so the questions that were asked did not get into the particulars. The child was asked, do you remember what happened in November 2008? And she said, yes, that was when Joker ended up touching me. She remembered, but they did not get into details. Ultimately, when counsel began to skirt the edges of that ruling and to get into the facts, the court restrained him upon the people's objection. And then he asked an ambiguous question, so do you remember those facts? And she said, I don't think so. By that time, she was a little bit confused by an ambiguous question and by the conversation  that she had with him. So the first thing that the defendant complains counsel should have done is to get in an inconsistent statement. A statement is not inconsistent unless it is actually inconsistent with the prior testimony. And in this case, it's not. The child was asked by defense counsel, remember when you were on a videotape talking to a lady, Mrs. Lewinsky, and this is the phonetic spelling, the defendant argues that the court reporter must have gotten this down wrong, and then just relies on speculation that the court reporter took it down wrong. But it's in the record, and presumptively, it is correct that counsel said Mrs. Lewinsky. Now, the child said no, because she was not interviewed by a Mrs. Lewinsky. She was interviewed by a Mrs. Leszewski, which doesn't sound like Lewinsky, other than it starts with an L and ends with an E sound. But the child was being very particular and attentive and said no, she did not remember being interviewed by a Mrs. Lewinsky, because in fact, she was not. So her testimony at the competency hearing is not inconsistent with her testimony at trial that she remembered being interviewed by the Leszewski person, the Elizabeth Leszewski. So it's not inconsistent. What was the basis for objecting to the narration of detail in the competency hearing? I mean, the competency statute looks at the ability to recall and to narrate the events, and it seems to me that the judge prohibited that. Limited it, yes. Limited it just so you're not going into the facts. Not, no, he said that the counsel would not be permitted to turn this into a deposition. But the inquiry was into the child's ability to recall and to communicate and to appreciate the duty to tell the truth. And the court was able to do that without getting, without permitting counsel to get into the particular facts. But to say defense counsel was permitted to ask you remember what happened in November 2008, and then she said, yes, I remember that was when Joker ended up touching me. And that's as far as into the facts that the court wanted to go as to the actual event itself. But the rest of it was fair game. And the child was able to spell her last name, was able to correct her age. She just had turned 11. She had been 10, and just her birthday had been just a little over two weeks before the competency hearing. So she said 10, but she's just hadn't gotten used to saying 11 yet.  That's the argument. But was any physician appointed or psychologist appointed to help the court determine competency? No, I don't believe so. I don't believe so. The court simply examined. The court did find that E.H.'s sister, S.H., was not competent. So the court just did not do a rubber stamp. The court did an examination and made the determination. And the defendant is not able to show that the court committed an abuse of discretion in permitting E.H. to testify. Well, the reason I ask is when you give a child Prozac at age eight, somebody has to prescribe that. And it's because, I mean, for the average Joe like me, I mean, I wonder why a child is given Prozac at age eight. That's why I'm wondering why the court didn't have some kind of help in this case. All of that came out at the trial in the jury. What was the explanation? The Prozac. Prozac. I suppose that she was having emotional problems. So it didn't come out at trial. The medical reason did not come out at trial. I thought you said it did. She testified it was for her attitude. Right, but nobody really explains what this is all about from a physician point of view. Is that right? I don't recall that they did. But nonetheless, the jury had before it the information and the information that she had been given pills and that at the time she was given the pills, she believed at age eight that they were to help her memory. But she came to understand later by the time she was 11 that, in fact, they weren't for memory. And the jury had before it the information that needed to determine whether she had been coached or whether, you know, by the mother. And this was this was a jury question and not a competency question. And do you agree with the defense that this was a closed case? Put you on the spot, I know. You know, it did. It did hinge on the child's credibility and the defense counsel brought out the whole memory pill thing. It came in substantively. The jury knew that the jury knew that and counsel argued ably that the child had been coached. The jury had to make a determination which person to believe. And I'm sure it was a difficult question, a difficult question to resolve. But counsel was not ineffective because he didn't bring out the fact that she denied being interviewed by a Mrs. Lewinsky when, in fact, she hadn't been. And that's not inconsistent with her testimony at trial that she was interviewed by Mrs. Lewinsky. And the fact that she didn't remember those facts, that doesn't have anything particular, no particular facts that she that she denied remembering because they didn't get into the facts at the at the competency hearing. But she did aver at the competency hearing that she remembered that was when Joker ended up touching me. She did remember that. Was there anything that triggers her memory? I mean, she didn't report this until a year after he left. Was there anything that triggered her memory? I mean, was there any explanation as to why a year later, after moving in the cousins, all of a sudden she remembered? The jury was aware of whatever reasons she may not have reported promptly, but children are often confused by such things, and they don't know whether to report it or not, whether it was improper or not. They're confused. And she was just eight. OK, thank you. Thank you. Counsel. Your Honor, you just asked your honor why she reported until December of 2009. And the forensic interview, she actually explained that she reported it after her mother gave her pills to help her remember everything about school, what happened about Joker, and what happened when her uncle locked her in the bathroom. And that was, according to E.H.'s testimony at the forensic interview, what led her to come forward in December of 2009 and make these allegations. As for counsel's argument that this was not an inconsistent statement because defense counsel used the wrong name at the witness competency hearing, your Honor, this is simply a red herring. No one at the actual competency hearing disputed the fact that counsel was using an incorrect name. And if you actually look at the two names together, Ms. Liz Whiskey, or however the pronunciation was at the trial, the state objected numerous times for numerous different reasons, but never once did they say, wait a minute, we're using the wrong name here. And further, the court reporter actually noted in her transcript that this was a phonetic spelling. So at this point, the state's attempting to impeach the record by saying, hey, this was the wrong spelling, when in fact there's no record that the actual pronunciation at the competency hearing was incorrect, only that the court reporter was unsure of how to spell a complicated name like Lizzy Whiskey. Your Honor, further, at the competency hearing, she did get into the facts a little bit. Counsel asked her, do you remember talking to this woman at the child advocacy center? And she said, no, she didn't recall that. Do you remember talking to her about these memory pills? She did not recall that. And counsel even prompted her, you know, you went there and you drew some pictures. She still didn't remember that. And although she made the comment that she remembered that Mr. Grayhouse touched her, she also said that she couldn't remember the facts. So she remembered the single allegation, but she couldn't remember those facts. And then counsel wasn't allowed to ask her any further questions, Your Honor. So at the witness competency hearing, it was impossible for anyone to understand if she could actually recall the facts. And we certainly know that she couldn't recall the forensic interview that happened a month after her or within the month of the allegations itself. And further, Your Honors, this should have been used at trial to impeach her. As counsel just admitted, the jury would have struggled with trying to determine whether Mr. Grayhouse was guilty. Had the jury known that three months before the trial, she couldn't remember any of these facts, and yet she supposedly hadn't been coached and hadn't been prompted by anyone, there's a reasonable probability that the jury verdict would have turned out differently. The court has no further questions. We do, thank you. We appreciate the briefs and arguments. Counsel will take the case under advisement.